DONNA EDWARDS, PLAINTIFF-RESPONDENT, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF MOONACHIE, DEFENDANT-APPELLANT.

Argued September 19, 1949—Decided October 17, 1949.

18 

*Mr. C. Conrad Schneider* argued the cause for appellant. *Mr. Guy W. Calissi,* attorney.

*Mr. Leo Rosenblum* argued the cause for respondent. *Mr. Sebastian Gaeta,* attorney.

The opinion of the court was delivered by

HEHER, J. The question at issue here is the validity of an ordinance "to license and regulate trailer camps and camp sites," adopted by the defendant municipality on September 17, 1947.

· "Trailer camp" was defined in the ordinance as "any place where a trailer may be parked for longer than three hours, other than in a closed building;" "trailer" as "any vehicle used or constructed to be used as a conveyance upon public streets, whether self-propelled or otherwise, and so designed as to permit the occupancy thereof as a dwelling or sleeping place, and non-self-propelled vehicles of any kind or character constructed or intended to be moved under fuel power;" and "camp site" as "any place where a person is permitted to sleep or dwell other than in a permanent dwelling." The license fee was fixed at $200 per annum "and the sum of $1 per calendar week or part thereof per trailer." The fee was "imposed for revenue."

It was made incumbent upon the licensee to keep a "camp registry," to provide certain camp facilities, and to take specific measures for sanitation which need not be here enumerated. Suffice it to say that the regulation combines both police and tax measures. For the power, the municipality cites *R. S.* 40:52–1 (d) and 40:52–1 (g), as they were when the ordinance was adopted. The Appellate Division of the ·Superior Court found the inapplicability of subsection (d) so obvious as not to merit discussion. Invoking the doctrine of *ejusdem generis,* the general words of subsection (g) were

considered as restrained by the prior specific enumeration, and so not embracive of the business in question.

The municipality, while denying the validity of this view, urges that the inclusion of "trailer camps and camp sites" in the class comprised in subsection (d) by the amendment effected by Chapter 425 of the Laws of 1948 (*P. L., p.* 1664), served to supply the asserted want of power and to validate the ordinance. The insistence is that the question of power is governed by the state of the law at the time when the Appellate Division determined the issue, and that the regulation is effective if at that time it was grounded in statutory authority, even though there was none at all at the time of its adoption. But this reasoning is patently faulty.

The power to levy license fees, either as a police regulation or for revenue, is not inherent in municipal corporations; and an ordinance to either end without a statutory grant of power is *ultra vires* the municipality and void. *Muhlenbrinck v. Commissioners,* 42 *N. J. L.* 364 (*Sup. Ct.* 1880); *Breninger v. Belvidere,* 44 *N. J. L.* 350 (*Sup. Ct.* 1882); *Haynes v. Cape May,* 52 *N. J. L.* 180 (*E. & A.* 1889); *Mulcahy v. Newark,* 57 *N. J. L.* 513 (*Sup. Ct.* 1895); *Cape May v. Cape May Transportation Co.,* 64 *N. J. L. .*80 (*Sup. Ct.* 1899); *Morristown Auto Bus Co. v. Madison,* 85 *N. J. L.* 59 (*Sup. Ct.* 1913); *Dunn v. City of Hoboken,* 85 *N. J. L.* 79 (*Sup. Ct.* 1913); *Becker v. Pickersgill,* 105 *N. J. L.* 51 (*Sup. Ct.* 1928). A subsequent grant of such authority, without more, does not serve to validate the measure. The mere inclusion of the power by legislative amendment does not give legal force to a prior local enactment void *ab initio* for want of such power. The amendment here is not in terms curative legislation, operating prospectively upon the invalid regulation. The validation of the ordinance was plainly not within legislative contemplation. And its subject matter was not re-enacted by the local legislative tribunal after the adoption of the amendment.

It is axiomatic that, barring curative legislation, a local ordinance is utterly without force or vitality unless it constitutes the exercise of power vested in the municipal

body at the time of its adoption. A municipal corporation is a government of enumerated powers, acting by a delegated authority. It is a creature of the Legislature; and it possesses only such rights and powers as have been granted in express terms, or arise by necessary or fair implication, or are incident to the powers expressly conferred, or are essential to the declared objects and purposes of the municipality. It has no inherent jurisdiction to make laws or adopt regulations of government. *New Jersey Good Humor, Inc., v. Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1939); *City Affairs Committee v. Jersey City,* 134 *N. J. L.* 180 (*E. & A.* 1945). The Constitution of 1947, effective January 1, 1948, secures to counties and municipal corporations powers "of necessary or fair implication" or "incident" or "essential" to those granted in express terms; and it enjoins a liberal construction in their favor of the provisions of the Constitution and "of any law concerning" them. *Article IV, section VII, paragraph* 11.

The inquiry, therefore, is whether the challenged local legislative action was comprehended within the grant of power existent at the time it was taken.

The rule of *ejusdem generis* has not heretofore been considered as limiting the class comprised in subdivision (g), cited *supra,* to stores for the sale of goods and chattels. The sale of coal storage service was the business regulated and taxed by the ordinance considered in *Independent Warehouses, Inc., v. Scheele,* 134 *N. J. L.* 133 (*E. & A.* 1945); affirmed, 331 *U. S.* 70, 67 *Sup. Ct.* 1062, 91 *L. Ed.* 1346 (1947). And in *Becker v. Pickersgill,* cited *supra,* the old Supreme Court read the provision as including within the subject class master and journeymen electricians. In the Revision of 1937, the words "or occupation" were eliminated from the concluding phrase relating to the licensing of the places and premises wherein the particular business is carried on; but that does not signify a change of substance. The specific enumeration of the businesses subject to regulation and taxation was followed not only by words which make the class inclusive of stores for the sale of "goods and chattels of every kind," but immediately thereafter by the general and

all-embracive clause "and all other kinds of business conducted in the municipality other than herein mentioned."

But the existence of the power is not dependent upon the meaning of this provision. It was plainly within the grant of subsection (d) as it was at the time of the adoption of the ordinance. The particular description here is "hotels, boarding houses, lodging and rooming houses;" but the general clause embraces "all other places" as well as "buildings used for sleeping and lodging purposes, restaurants and all other eating places, and the keepers thereof." To hold that the general words are not inclusive of "trailer camps" and "camp sites," as defined by the ordinance, would be to deprive them of all meaning. Trailer camps and camp sites, in the view of the ordinance, comprise "places" used for "sleeping and lodging purposes." This is not open to doubt.

The rule of *ejusdem generis* is in aid of construction where the expression is of doubtful meaning; and it has no application where the legislative design is expressed in plain and unambiguous terms. The doctrine is a specific application of the maxim *"noscitur a sociis;"* and it would be a perversion of its essential purpose if it were allowed to render general words meaningless. It is not an absolute formula that overrides all other canons of interpretation; and it is never applied to defeat the legislative purpose revealed by the provision in its entirety, giving to all the terms their normal sense and significance. It goes without saying that general terms in a statute must be given a meaning beyond the particular words where it is plain from the whole that they were used in a broader sense. As with all other canons of construction, the doctrine yields to the intention revealed by the context, viewing the language in its ordinary acceptation. *Mason v. United States, 260 U. S. 545, 43 Sup. Ct. 200, 67 L. Ed. 396 (1922); Danciger v. Cooley, 248 U. S. 319, 39 Sup. Ct. 119, 63 L. Ed. 266 (1918); Helvering v. Stockholms Enskilda Bank, 293 U. S. 84, 55 Sup. Ct. 50, 79 L. Ed. 211 (1934); United States v. Gilliland, 312 U. S. 86, 61 Sup. Ct. 518, 85 L. Ed. 598 (1940).*

Where, as here, the words of particular description exhaust

the class or genus, there is nothing left for the operation of the rule of *ejusdem generis*. If in that circumstance the general terms be deemed narrowed by the specific words, they will have no meaning whatever, contrary to the presumption that they are not surplusage but were used purposefully. The doctrine of *ejusdem generis*, while aimed to preserve a meaning for the particular words, "is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the genus, there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words, or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose." *National Bank of Commerce v. Estate of Ripley*, 161 *Mo.* 126, 132, 61 *S. W.* 587, 588 (1901). The principle was applied in *United States v. Mescall*, 215 *U. S.* 26, 30 *Sup. Ct.* 19, 54 *L. Ed.* 77 (1909); *American Ice Co. v. Fitzhugh*, 128 *Md.* 382, 97 *A.* 999 (1916); *Kansas City Southern Ry. Co. v. Wallace*, 38 *Okla.* 233, 132 *Pac.* 908 (1913).

The subsequent amendment of subsection (d) does not suggest a contrary legislative understanding of the terms of the original statute. The amendment was made after respondent's attack upon the particular ordinance as *ultra vires;* and it is clear that it was designed merely to clarify the doubt thus ensuing and to declare the true meaning of the original terms. Compare *Bailey v. Clark*, 21 *Wall.* 284, 22 *L. Ed.* 651 (1874); *In re Hurle*, 217 *Mass.* 223, 104 *N. E.* 336 (1914); *Slutts v. Dana*, 138 *Iowa* 244, 115 *N. W.* 1115 (1908); *Morgan v. Knopf*, 210 *Ill.* 453, 71 *N. E.* 340 (1904). We would say, however, that while entitled to due consideration, the subsequent legislative construction of a statute is not conclusive of the significance of the prior act. The Legislature cannot authoritatively declare what a law is or has been, for that is essentially a judicial function. *Ogden v. Blackledge*, 2 *Cranch.* 272, 2 *L. Ed.* 276 (1804); *Gough v. Pratt,*

*9 Md.* 526 (1856); *Ashley's Case,* 4 *Pick.* 23 (1827); *Lewis'*
*Sutherland Construction* (2), § 358. Yet such legislative
construction of necessity carries great weight in determining
the intention of the prior statute.

But it is the insistence of respondent that, even so, the
ordinance contravenes the Fourteenth Amendment of the
Federal Constitution and article I, paragraph 1 of the State
Constitution, in that (1) the license fees exacted are un-
reasonable and confiscatory; and (2) no distinction is made,
in the regulatory and revenue licensing measures, between
trailers actually used for sleeping purposes and those parked
in the trailer court for storage only.

It is said that the license charge of $1 per calendar week
or part thereof for each trailer more than absorbs the income
remaining after payment of operating expenses, excluding all
compensation for managerial service and a return on the capi-
tal investment. The charge made by respondent to the users
of the trailer court is $5 per week per trailer, and an additional
charge of 50 cents per week if it houses more than two chil-
dren, and at the rate of $1 per day for less than a week. Re-
spondent provides the use of a utility house, showers, washing
machines, lavatories, toilets and washroom facilities, and water
and electric power, with an additional charge for washing
machines and for electric power beyond normal needs. Each
trailer lot has electric and water outlets. The transient, daily
business was but 5% of the whole. Respondent considers
these rates fair and reasonable; but the proofs show that the
fees charged for the like service at a trailer camp in a neigh-
boring community are $9.50 per week for three persons and
a daily rate of $1.50 for two persons, "plus $1.75 for three
and 25 cents a day for every extra individual, electricity in-
cluded." Moreover, there are two other trailer camps within
the municipality; and it is not intimated that the prescribed
license fee deprives the operators of a fair return upon their
investment. There is no showing that the burden of the tax
is such that profitable operation cannot be had under a fair
and reasonable rate for the service rendered. Indeed, it is
shown that, upon the adoption of the ordinance, respondent

raised her weekly rate from $5 to $6, to cover "the Moonachie Township tax," and promised to return the added $1 if this attack upon the ordinance should succeed.

There is proof that the operation of the particular trailer court has resulted in a substantial increase in the school enrollment and has given rise to special health and sanitation problems and needs.

The *quantum* of the license tax or excise levied rests in the sound discretion of the legislative authority; and judicial interposition is not warranted under the cited provisions of the Federal and State Constitutions unless the tax is prohibitory and unreasonable. There is a presumption that the tax assessed is reasonable in amount; and the burden rests upon the challenger to overthrow that presumption. The inquiry is whether the exaction bears a reasonable relation to the value of the privilege conferred. *Independent Warehouses, Inc., v. Scheele, supra; Bradley v. Richmond,* 227 *U. S.* 477, 33 *Sup. Ct.* 318, 57 *L. Ed.* 603 (1913). The operator of the business made subject to the excise cannot subvert or defeat the State's delegated power to tax by undervaluing the service. Here, respondent has not borne the burden of proving that the rate of taxation is not consonant with the value of the privilege and therefore prohibitive and unreasonable.

There is no occasion to determine the question raised in subdivision (2) of this point. The subject matter of this litigation is not a tax levied for the storage of trailers merely; and appellant is therefore not in a position to complain on this score. If the provision be deemed objectionable in that regard, the vicious element is severable and the remainder of the ordinance stands unaffected. *Independent Warehouses, Inc., v. Scheele, supra; P. J. Ritter Co. v. Bridgeton,* 135 *N. J. L.* 22 (*Sup. Ct.* 1946); affirmed, 137 *N. J. L.* 279 (*E. & A.* 1948); *North Jersey St. Ry. Co. v. Jersey City,* 75 *N. J. L.* 349 (*Sup. Ct.* 1907); *McGonnell v. Commissioners of Orange,* 98 *N. J. L.* 642 (*Sup. Ct.* 1923).

The judgment of the Appellate Division of the Superior Court is reversed, and the writ of *certiorari* is dismissed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.