973 A.2d 969 (2009)
408 N.J. Super. 117
TAC ASSOCIATES, Petitioner-Appellant,
v.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION and The New Jersey Economic Development Authority, Respondents-Respondents.
Docket No. A-1044-08T1
Superior Court of New Jersey, Appellate Division.
Argued May 12, 2009.
Decided July 1, 2009.
Howard P. Davis, Englewood Cliffs, argued the cause for appellant (The Law Office of Howard Davis, attorneys; Mr. Davis, of counsel; Anne Ronan and Deborah Ritter, on the brief).
Kimberly A. Hahn, Deputy Attorney General, argued the cause for respondents (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Hahn, on the brief).
Before Judges WINKELSTEIN, FUENTES and GILROY.
The opinion of the court was delivered by
FUENTES, J.A.D.
In this appeal, we are required to determine the validity of a regulation promulgated by the New Jersey Economic *970 Development Authority (EDA) to implement certain sections of the Hazardous Discharge Site Remediation Fund, N.J.S.A. 58:10B-4(a), "a special, revolving fund [established by the Legislature] for the purpose of financing remediation activities at sites at which there is, or is suspected of being, a discharge of hazardous substances or hazardous waste." N.J.A.C. 19:31-8.1.
As part of this Fund, the Legislature established Innocent Party Grants (IPG), a program intended to assist certain owners of contaminated properties defray the cost of remediation. N.J.S.A. 58:10B-5(d). The regulation challenged by petitioner, TAC Associates (TAC), limits the eligibility for an IPG by defining the term "innocent party" to mean, in addition to other unchallenged requirements, persons who continue to own the contaminated property until the application process is complete. Specifically, petitioner argues that EDA regulation N.J.A.C. 19:31-8.2 is inconsistent with the criteria for eligibility established by the Legislature in N.J.S.A. 58:10B-6(b)(4), the statute defining the term "innocent party." We agree with petitioner's position.
TAC is a general partnership consisting of four individuals. From 1975 to 2003,[1] TAC owned industrial property located at 35-41 Orlando Drive, in the Borough of Raritan. TAC ceased its industrial operations and sold the property in December 2003. The sale of the property triggered TAC's obligation, under the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 to -18 (ISRA), to investigate and remediate any contamination at the property prior to transferring title. N.J.S.A. 13:1K-9.
Pursuant to N.J.S.A. 13:1K-9 and N.J.A.C. 7:26B-3.2, TAC submitted a General Information Notice to the New Jersey Department of Environmental Protection (DEP) in November 2003, formally providing notice of the cessation of the facility's operations and the sale of the property. In that notification, TAC identified itself as the "authorized agent to work with the [DEP]" to perform the necessary remediation, and as the "firm responsible for conducting the remediation."
Prestige Environmental, Inc., a consultant retained by TAC to investigate and assess the level of contamination at the property, determined that there was hydrocarbon contamination in the soil and groundwater. In response, TAC and the buyer of the property agreed to create Remediation Trust Accounts to fund the needed remediation. According to TAC, "most of these funds have been already expended during the course of the environmental investigation."
In November 2007, the Legislature established within the EDA, "a special, revolving fund to be known as the Hazardous Discharge Site Remediation Fund" to provide financial assistance to governmental entities and individuals "for the purpose of financing remediation activities at sites at which there is, or is suspected of being, a discharge of hazardous substances or hazardous wastes." N.J.S.A. 58:10B-4(a).
The DEP and the EDA are the two State agencies responsible for the administration of these remediation funds. The DEP reviews the grant applications and makes eligibility determinations. Once an application is deemed eligible, it is referred to the EDA for financial review. *971 N.J.A.C. 7:26C-6.2(d)(1). Final approval of an application is made by the EDA. Ibid.
The Legislature also made the Hazardous Discharge Site Remediation Fund available to individual persons through the IPG. N.J.S.A. 58:10B-5(d). Under this statute, "[g]rants may be made from the remediation fund to persons who own real property on which there has been a discharge of a hazardous substance or a hazardous waste and that person qualifies for an innocent party grant pursuant to N.J.S.A. 58:10B-6." Ibid. (Emphasis added.)
Thus, to qualify as an "innocent party," an IPG applicant must satisfy the following statutory criteria:
A person qualifies for an innocent party grant if that person acquired the property prior to December 31, 1983, the hazardous substance or hazardous waste that was discharged at the property was not used by the person at that site, and that person certifies that he did not discharge any hazardous substance or hazardous waste at an area where a discharge is discovered.
[N.J.S.A. 58:10B-6(b)(4).]
Prior to October 2006, the EDA regulation defining "innocent party" eligibility for an IPG mirrored this statutory criteria. Effective October 16, 2006, the EDA amended the regulation defining "innocent party" eligibility for an IPG as follows:
"Innocent party" means a person who:
1. Acquired the real property prior to December 31, 1983 and continues to own the real property at least until the Authority renders final approval to the grant;

2. Demonstrates that the hazardous substance or hazardous waste that was discharged at the real property was not used by that person, or by any person that had permission to use the site from the applicant; and
3. Certifies that the applicant or any person that had permission to use the site from the applicant did not discharge any hazardous substance or hazardous waste at an area where a discharge is discovered.
[N.J.A.C. 19:31-8.2 (Emphasis added.)]
On June 20, 2008, TAC applied for an IPG. It is undisputed that, but for the "continuing ownership" requirement, TAC otherwise satisfied all criteria for eligibility to obtain an IPG. Stated differently, TAC met the statutory criteria in N.J.S.A. 58:10B-6(b)(4), but not the regulatory criteria in N.J.A.C. 19:31-8.2, as amended in October 2006.
By letter dated September 26, 2008, the DEP Chief of Brownfields Reuse, Site Remediation Program, formally notified TAC that: "Base[d] on the information provided the [DEP] is unable to recommend approval for this application because TAC Associates no longer owns the property. Pursuant to N.J.S.A. 58:10B, the IPG only applies to a property owner who meets the eligibility criteria." (Emphasis added.) This appeal followed.
TAC argues that the EDA regulation adding "continuing ownership" to the definition of "innocent party" is inconsistent with the clear language in N.J.S.A. 58:10B-6(b)(4), and therefore ultra vires. The DEP argues that to qualify for an IPG, an applicant must satisfy a two-prong test: (1) own real property on which there has been a discharge of a hazardous substance or a hazardous waste, N.J.S.A. 58:10B-5(d); and (2) meet the criteria in N.J.S.A. 58:10B-6(b)(4). Thus, according to the DEP, the EDA regulation, N.J.A.C. 19:31-8.2, requiring the applicant to continue to own the real property at least until final approval of the grant, is consistent with this statutory scheme.
We disagree with DEP's position. EDA regulation N.J.A.C. 19:31-8.2 is intended, *972 on its face, to modify the definition of an "innocent party." Indeed, prior to the October 2006 amendment at issue here, the regulatory language in N.J.A.C. 19:31-8.2 mirrored the statutory language in N.J.S.A. 58:10B-6(b)(4). The term "innocent party," as defined by the Legislature in N.J.S.A. 58:10B-6(b)(4), means: (1) a person who acquired the property prior to December 31, 1983; (2) the hazardous substance or hazardous waste that was discharged at the property was not used by the person at that site; and (3) that person certifies that he did not discharge any hazardous substance or hazardous waste at an area where a discharge is discovered. The added element of continued ownership in the regulation is thus unmistakably inconsistent with the statute.
We are mindful that administrative regulations enjoy a presumption of validity and should be upheld unless clearly ultra vires on their face. N.J. Ass'n of Health Care Facilities v. Finley, 83 N.J. 67, 80, 415 A.2d 1147, appeal dismissed and cert. denied, 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980). A regulation that is plainly at odds with its enabling statutory authority must be set aside. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89, 852 A.2d 1083 (2004). We have invalidated regulations that, although well-intended, clearly lack statutory support. In re N.J.A.C. 12:17-9.6 ex rel. State Dept. of Labor, 395 N.J.Super. 394, 408, 928 A.2d 956 (App.Div.2007).
Here, the regulatory criteria in N.J.A.C. 19:31-8.2 excludes a class of individuals envisioned by the Legislature as eligible to apply for an IPG. Such clear inconsistency between regulation and statute compels that we invalidate the regulation as ultra vires. In re Freshwater, supra, 180 N.J. at 488-89, 852 A.2d 1083.
As a matter of public policy, TAC also argues that the Legislature was aware at the time it created the IPG program that, in some cases, it takes years to complete a thorough and comprehensive environmental investigation. ISRA thus permits a property owner to sell his or her property pending the completion of the environmental investigation, but with the understanding that he or she remains potentially liable for the cost of remediation. The IPG is intended to provide financial assistance to innocent owners who, through no fault of their own, find themselves in possession of contaminated lands. If the IPG program is restricted to those who own the property at the time of the application, it would create a financial disincentive to sell these contaminated sites, thus undermining the rationale for permitting the conditional sales. TAC argues that such an inconsistency in public policy goals is another factor in support of invalidating N.J.A.C. 19:31-8.2 in its current form.
The Attorney General, on behalf of both the DEP and EDA, also raises strong public policy concerns. According to DEP, requiring IPG applicants to own the contaminated site at the time of application prevents a subsequent buyer from exacerbating the environmental damage to the site after the seller is no longer in possession and control of the lands. This creates the possibility of a "shell game," through which potentially liable parties can escape responsibility by accusing the other of causing or exacerbating the contamination. Moreover, property owners are free to investigate and determine the extent of contamination, and then decide whether it is cost-effective to apply for an IPG and defer the sale, or forgo the IPG process and proceed with the sale. Thus, the Attorney General argues that the "continuing ownership" requirement can be satisfied without any inhibition to the right to sell.
We recognize that both sides here have advanced strong public policy arguments *973 in support of their respective positions. That being said, public policy arguments in favor or against a "continuing ownership" requirement to an IPG are better suited for a legislative forum than an appellate courtroom. Our role is to enforce the will of the Legislature. Given the clear inconsistency between the statutory and regulatory criteria presented here, we are compelled to invalidate the regulation. Statutes cannot be amended by administrative fiat.
By way of recapitulation, we hold that the definition of "innocent party" in N.J.A.C. 19:31-8.2 is inconsistent with the statutory definition in N.J.S.A. 58:10B-6(b)(4). We therefore declare N.J.A.C. 19:31-8.2 ultra vires and invalid. As a consequence, we reverse the decision of the DEP rejecting TAC's application to receive an IPG on this ground, and remand for such further proceedings and consideration as may be warranted.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] These dates were taken from TAC's brief to this court. In its brief on behalf of the DEP/EDA, the Attorney General states, without citation to the record, that TAC acquired the property on February 8, 1977, and sold it on January 9, 2004. This discrepancy is legally inconsequential, however, because both parties agree that TAC purchased the property before December 31, 1983, the cut-off date for eligibility for an IPG.