998 A.2d 450

TAC ASSOCIATES, PETITIONER–RESPONDENT, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND THE NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY, RESPONDENTS–APPELLANTS.

Argued April 27, 2010—Decided July 15, 2010.

Justice Rivera–Soto dissented, with opinion.

534

*Kimberly A. Hahn,* Deputy Attorney General, argued the cause for appellants (*Paula T. Dow,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Ms. Hahn* on the briefs).

*Howard P. Davis* argued the cause for respondent (*Mr. Davis* of counsel; *Mr. Davis, Anne M. Ronan, Deborah J. Ritter,* and *Eric M. Grille,* on the briefs).

Justice LONG delivered the opinion of the Court.

The Department of Environmental Protection (DEP) rejected an application for an Innocent Party Grant (IPG), a remedy under the Brownfield and Contaminated Site Remediation Act (BCSRA or "the Act") intended to help certain owners of contaminated property defray the cost of remediation. *N.J.S.A.* 58:10B–5(d). The rejection was based on the fact that the applicant no longer owned the property and "[p]ursuant to the *N.J.S.A.* 58:10B, the IPG only applies to a property owner who meets the eligibility criteria." The applicant appealed and the Appellate Division reversed and remanded. *TAC Assocs. v. N.J. Dep't. of Envtl. Prot.,* 408 *N.J.Super.* 117, 973 *A.*2d 969 (App.Div.2009). The State filed a petition for certification, which we granted. 200 *N.J.* 549, 985 *A.*2d 647 (2009). Because the applicant did not own the property at the time of the application, it was ineligible for an IPG grant under the Act and thus we reverse.

I.

Our starting point is a brief overview of the statutory and regulatory schemes that govern hazardous or contaminated site remediation in New Jersey. In 1983, the Environmental Cleanup Responsibility Act (ECRA) was enacted to address the remediation of contaminated sites. *L.* 1983, *c.* 330, §§ 1–11. In 1993, ECRA was revised and renamed the Industrial Site Recovery Act (ISRA). *L.* 1993, *c.* 139, §§ 1–49. The enactment of ISRA established the Hazardous Discharge Site Remediation Fund (HDSRF). *L.* 1993, *c.* 139, § 26. The HDSRF was intended to provide financial assistance or grants "for the purpose of financing remedi-

ation activities at sites at which there is, or is suspected of being, a discharge of hazardous substances or hazardous wastes." *L.* 1993, *c.* 139, § 26 (*N.J.S.A.* 58:10B–4).

In 1998, BCSRA went into effect and several ISRA provisions, including the HDSRF, were denominated as part of BCSRA. *See L.* 1997, *c.* 278, § 12; *N.J.S.A.* 58:10B–1.1. One of the grants available under the HDSRF is an IPG. BCSRA defines who is eligible to receive an IPG in two sections.

The first section, *N.J.S.A.* 58:10B–5, provides: [1]

> Grants may be made from the remediation fund *to persons who own real property* on which there has been a discharge of a hazardous substance or a hazardous waste and that person qualifies for an innocent party grant pursuant to [*N.J.S.A.* 58:10B–6].
>
> [*N.J.S.A.* 58:10B–5(d) (emphasis added).]

*N.J.S.A.* 58:10B–6, in turn, reiterates the ownership requirement and sets forth what an applicant must show in order to establish innocence:

> *Moneys shall be allocated for grants to persons who own real property* on which there has been a discharge of a hazardous substance or a hazardous waste and that person qualifies for an innocent party grant. *A person qualifies for an innocent party grant if that person acquired the property prior to December 31, 1983, the hazardous substance or hazardous waste that was discharged at the property was not used by the person at that site, and that person certifies that he did not discharge any hazardous substance or hazardous waste at an area where a discharge is discovered.* A grant authorized pursuant to this paragraph may be for up to 50% of the remediation costs at the area of concern for which the person qualifies for an innocent party grant, except that no grant awarded pursuant to this paragraph to any person may exceed $1,000,000[.]
>
> [*N.J.S.A.* 58:10B–6(a)(4) (amended by *L.* 2009, *c.* 303, § 1) (emphasis added).]

Two agencies are responsible for the implementation of the HDSRF: the DEP and the New Jersey Economic Development Authority (EDA). *N.J.S.A.* 58:10B–1, –4.[2] The DEP reviews

---

[1] We refer to the version of the statute that was in effect during the relevant time periods in this case. As will be further explained, the Act has since been amended.

[2] Both the EDA and DEP have regulations that govern the application process for loans and grants from the HDSRF. *See N.J.A.C.* 7:26C–11.1–11.4 (DEP); *N.J.A.C.* 19:31–8.1–8.15(EDA).

grant applications and refers applications it deems eligible to the EDA. *See N.J.A.C.* 19:31–8.9; *N.J.A.C.* 7:26C–11.2. The EDA takes final action on all eligible grant applications. *See N.J.A.C.* 19:31–8.9.

In furtherance of its mission, the EDA is empowered to adopt any requirement "the [A]uthority shall deem necessary or appropriate in carrying out the purposes for which the Hazardous Discharge Site Remediation Fund was created." *N.J.S.A.* 58:10B–8(a)(8). Pursuant to that power, in 1994 the EDA promulgated *N.J.A.C.* 19:31–8 to implement the provisions of the HDSRF. *See* 26 *N.J.R.* 1706, 1708 (Apr. 18, 1994) (adopted as *R.* 1994 *d.* 192). In line with the statute, that regulation provided the eligibility criteria for the grant of an IPG. Specifically, where non-public entities are concerned, *N.J.A.C.* 19:31–8.3(c) established that

(c) Grants from the Fund may be made to:

2. Persons ... *who own real property* on which there has been a discharge of a hazardous substance or a hazardous waste and that person qualifies for an innocent party grant pursuant to section 28 of the Act.

[*N.J.A.C.* 19:31–8.3(c) (1994) (emphasis added); *see also* 26 *N.J.R.* 1706, 1709 (Apr. 18, 1994) (amended as *N.J.A.C.* 19:31–8.3(d)).]

The regulation also contained the following definition of "innocent party":

[A] person who acquired the property prior to December 31, 1983, who can demonstrate that the hazardous substance or hazardous waste that was discharged at the property was not used by the person, or any person with operational control, and who can demonstrate that he or any person with operational control at that site, and that person certifies that he, or any person with operational control, did not discharge any hazardous substance or hazardous waste at an area where a discharge is discovered.

[*N.J.A.C.* 19:31–8.2 (1994); *see also* 26 *N.J.R.* 1706, 1709 (Apr. 18, 1994).]

In 2006, *N.J.A.C.* 19:31–8.2 amended the definition of innocent party to read as follows:

1. Acquired the real property prior to December 31, 1983 *and continues to own the real property at least until the Authority renders final approval to the grant;*

2. Demonstrates that the hazardous substance or hazardous waste that was discharged at the real property was not used by that person, or by any person that had permission to use the site from the applicant; and

3. Certifies that the applicant or any person that had permission to use the site from the applicant did not discharge any hazardous substance or hazardous waste at an area where a discharge is discovered.

[*N.J.A.C.* 19:31–8.2 (emphasis added); *see also* 38 *N.J.R.* 4267, 4504 (Oct. 16, 2006).]

On January 17, 2010, the Legislature amended BCSRA to mirror the regulation's revised ownership language. *N.J.S.A.* 58:10B-6(a)(4) (amended by *L.* 2009, *c.* 303, § 1).[3]

## II.

The facts in the case are detailed in the decision of the Appellate Division. *TAC Assocs., supra,* 408 *N.J.Super.* at 119–22, 973 *A.*2d 969. In brief, TAC Associates (TAC) owned an industrial site in Raritan Township from the mid–1970s until January 2004 when it sold the property.[4] In November 2003, as required by ISRA, *N.J.S.A.* 13:1K–9(a), TAC submitted a General Information Notice to the DEP advising that the facility was ceasing operations and was subject to sale. ISRA also obligated TAC to investigate potential contaminations prior to transferring title. *See N.J.S.A.* 13:1K–9(b)(3). TAC hired an environmental consultant who discovered hydrocarbons at the property. In response,

---

[3] The statute now provides:

Moneys shall be allocated for grants to persons who own real property on which there has been a discharge of a hazardous substance or a hazardous waste and that person qualifies for an innocent party grant. *A person qualifies for an innocent party grant if that person acquired the property prior to December 31, 1983 and continues to own the property until such time as the authority approves the grant,* the hazardous substance or hazardous waste that was discharged at the property was not used by the person at that site, and that person certifies that he did not discharge any hazardous substance or hazardous waste at an area where a discharge is discovered. A grant authorized pursuant to this paragraph may be for up to 50% of the remediation costs at the area of concern for which the person qualifies for an innocent party grant, except that no grant awarded pursuant to this paragraph to any person may exceed $1,000,000[.]
[*N.J.S.A.* 58:10B–6(a)(4) (emphasis added).]

[4] The exact date of TAC's purchase and sale of the property is unclear; however, that dispute is inconsequential to the legal analysis.

TAC and the property buyer established remediation trust accounts in anticipation of remediation costs. According to TAC, the funds have been largely depleted.

On June 20, 2008, despite the fact that it no longer owned the property, TAC applied to the DEP Office of Brownfield Reuse for an IPG. As statutorily required, TAC certified that it purchased the property prior to December 31, 1983, that it did not use the hazardous substances discharged at the property or permit anyone else to do so, and that it did not discharge any hazardous substance or hazardous waste at the property.

On September 26, 2008, the DEP informed TAC by letter that it was ineligible for a grant because it "no longer owns the property. Pursuant to the *N.J.S.A.* 58:10B, the IPG only applies to a property owner who meets the eligibility criteria."

TAC filed an appeal arguing, among other things, that the statute does not require that an applicant be the present owner of the property at the time of application, and that *N.J.A.C.* 19:31–8.2, which added the continuous ownership requirement to the definition of an innocent party, was inconsistent with the definition of ownership in *N.J.S.A.* 58:10B–6(a)(4).[5] The Appellate Division reversed and remanded. Without addressing the ownership language in BCSRA, the panel held that the regulatory definition of an innocent party, which requires continuous ownership until final grant approval, is invalid because it is inconsistent with the statutory definition of innocent party. *TAC Assocs., supra,* 408 *N.J.Super.* at 119, 973 *A.*2d 969.

### III.

When interpreting a statute, our main objective is to further the Legislature's intent. *Bd. of Educ. of Sea Isle City v. Kennedy,* 196 *N.J.* 1, 12, 951 *A.*2d 987 (2008) (citing *Thomsen v.*

---

[5] In its written submissions, TAC cited *N.J.S.A.* 58:10B–6(b)(4) for the definition of "innocent party." The Appellate Division followed suit. However, the definition is found at *N.J.S.A.* 58:10B–6(a)(4).

*Mercer–Charles,* 187 *N.J.* 197, 206, 901 *A.*2d 303 (2006)). To discern the Legislature's intent, courts first turn to the plain language of the statute in question. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005) (citing *Lozano v. Frank DeLuca Constr.,* 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004)). In reading the language used by the Legislature, the court will give words their ordinary meaning absent any direction from the Legislature to the contrary. *Serv. Armament Co. v. Hyland,* 70 *N.J.* 550, 556, 362 *A.*2d 13 (1976) (citing *Safeway Trails, Inc. v. Furman,* 41 *N.J.* 467, 487, 197 *A.*2d 366 (1964)). "If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over." *Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys.,* 192 *N.J.* 189, 195, 927 *A.*2d 543 (2007) (citing *DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039).

Where the plain meaning does not point the court to a "clear and unambiguous result," it then considers extrinsic evidence from which it hopes to glean the Legislature's intent. *Bedford v. Riello,* 195 *N.J.* 210, 222, 948 *A.*2d 1272 (2008) (citing *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039). Included within the extrinsic evidence rubric are legislative history and statutory context, which may shed light on the drafters' motives. *Aponte–Correa v. Allstate Ins. Co.,* 162 *N.J.* 318, 323, 744 *A.*2d 175 (2000) (citing *Twp. of Pennsauken v. Schad,* 160 *N.J.* 156, 170, 733 *A.*2d 1159 (1999)). Likewise, interpretations of the statute and cognate enactments by agencies empowered to enforce them are given substantial deference in the context of statutory interpretation. *Matturri v. Bd. of Trs., Judicial Ret. Sys.,* 173 *N.J.* 368, 381, 802 *A.*2d 496 (2002) (citing *R & R Mktg., LLC v. Brown– Forman Corp.,* 158 *N.J.* 170, 175, 729 *A.*2d 1 (1999)).

Even when the language of the statute is ambiguous and
the Legislature has not addressed the precise question of statutory meaning, [we]

may not simply impose [our] own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

[*Id.* at 381–82, 802 *A.*2d 496 (alterations in original) (quoting *Kasper v. Bd. of Trs., Teachers' Pension and Annuity Fund,* 164 *N.J.* 564, 581, 754 *A.*2d 525 (2000)).]

However, agencies may not interpret a statute in a way that "give[s] it a greater effect than its language permits." *GE Solid State, Inc. v. Dir., Div. of Taxation,* 132 *N.J.* 298, 306, 625 *A.*2d 468 (1993) (citing *Kingsley v. Hawthorne Fabrics, Inc.,* 41 *N.J.* 521, 528, 197 *A.*2d 673 (1964); *Serv. Armament Co., supra,* 70 *N.J.* at 563, 362 *A.*2d 13).

Moreover, amendments carry "great weight" in determining the intention of the original statute. *See Edwards v. Mayor & Council of Borough of Moonachie,* 3 *N.J.* 17, 24–25, 68 *A.*2d 744 (1949); *Boyd v. Marini,* 132 *N.J.Super.* 324, 328, 333 *A.*2d 559 (App.Div.1975) (describing subsequent legislation as "convincing" aid to interpreting earlier law). That is the backdrop for our inquiry.

## IV.

The State agencies argue that *N.J.S.A.* 58:10B–5 and *N.J.S.A.* 58:10B–6 provide that an IPG is available only to "persons who *own* real property on which there has been a discharge of a hazardous substance or a hazardous waste"; that the ordinary meaning of "own" is clear and unambiguous; that if there was any confusion over the issue, the Legislature has now clarified it in the amendment to *N.J.S.A.* 58:10B–6(a)(4), which should be applied here; that the Appellate Division failed to show appropriate deference to the agencies' interpretation of the Act; and that the Appellate Division's holding would create a financial strain on the State and on the HDSRF by expanding eligibility for grants to a broader array of applicants not contemplated by the Legislature.

TAC counters that the EDA regulation adding "continuous ownership" to the definition of "innocent party" is inconsistent with the clear language in *N.J.S.A.* 58:10B–6(a)(4), and therefore ultra vires. Among the various arguments that TAC has advanced at the different stages of these proceedings are the following: that the pre-amendment Act did not require that an IPG

applicant own the property at the time of the grant application; that the Legislature's use of the word "own" was intended to limit the class of eligible applicants to those who owned property either at the time of the enactment of BCSRA or ISRA; that the use of the word "own" was meant to differentiate "owners" from "operators" under ISRA; and that, in any event, the 2010 amendment to the statute should not be applied retroactively.

We think that the State has the better argument. In reaching that conclusion, it is unnecessary for us to grapple with the thorny issue of retroactivity because we have determined that the Act, in its pre-amendment form, precluded TAC from eligibility for an IPG.

## V.

We return to the statute which, in two separate sections, authorizes the allocation of money for and the award of an IPG only "to persons who *own* real property on which there has been a discharge of a hazardous substance[.]" *N.J.S.A.* 58:10B–5(d); *N.J.S.A.* 58:10B–6(a)(4) (emphasis added). That is the first hurdle to be overcome by an IPG applicant. The second hurdle is that the party meets the innocence standard, that is: (1) that the property was acquired prior to December 31, 1983; and (2) that the applicant did not discharge or utilize the hazardous waste. *N.J.S.A.* 58:10B–6(a)(4).[6]

The statute frames ownership in the present tense. By contrast, discharge is framed in the present perfect tense, "there has been." Thus, in describing discharge, the Legislature denoted actions that began in the past when, presumably, the innocent owner was not discharging toxic chemicals. To the contrary, the Legislature chose not to so describe ownership, signaling that only present owners could apply, not those who had owned in the past

---

[6] Like the Appellate Division, which completely missed the ownership language in *N.J.S.A.* 58:10B–6, our dissenting colleague fails to consider that plain statutory provision and argues as if it did not exist.

but no longer did so. That language, which is used twice, brooks no confusion—it declares that to apply for an IPG, an applicant must own the contaminated property.

Although the statute is clear on its face, in an abundance of caution, we have reviewed the legislative history of the BCSRA. Such history often is rich with clues as to the interpretation of statutory language. That is not the case here, at least insofar as TAC's reading of the BCSRA is concerned. We find nothing in that history that would warrant us to reject the ordinary meaning of the word "own" in favor of the far-fetched interpretations forged by TAC.

Furthermore, amendments carry "great weight" in determining the intention of the original statute. *Edwards, supra,* 3 *N.J.* at 24–25, 68 *A.*2d 744. Here, the Legislature amended the Act to require "continuous" ownership leaving no doubt that ownership in the past would not pass muster. While TAC suggests alternative interpretations of the meaning of "own," under the statute in effect at the time of this case, the DEP's determination that an applicant must own the property at the time of the application was unassailable.

We add that even if there were ambiguity as to the meaning of "own" (and we do not perceive one), the DEP's interpretation is certainly one permissible construction of the statute. In those circumstances, we defer to that construction in recognition of the agency's expertise in the field. *See Matturri, supra,* 173 *N.J.* at 381–82, 802 *A.*2d 496 (quoting *Kasper, supra,* 164 *N.J.* at 581, 754 *A.*2d 525).

For all those reasons, because TAC had sold the property years prior to its IPG application, the DEP properly declared it ineligible for a grant. Accordingly, the Appellate Division's ruling to the contrary cannot stand.

## VI.

TAC also argues, as it did before the Appellate Division, that the specific temporal requirement in *N.J.A.C.* 19:31–8.2 of

ownership through "final approval" separately exceeds the statutory mandate. There are several problems with that contention. First and foremost, TAC's application was rejected under the Act, not because it failed to own the property through final approval, but because TAC did not own the property *when it applied* for the IPG. This is not a case in which a party owned the property at the time of the application but sold it before final approval. Such a case would implicate the temporal element of the regulation. Here, TAC was not aggrieved or otherwise affected in any way by the "at least until the Authority renders final approval" language. There was thus no warrant for the Appellate Division even to address that portion of the regulation. Having done so and having struck down the regulation in a published opinion, we are constrained to comment here.

The statute provides that money cannot be allocated and a grant cannot be awarded in the absence of ownership. That, in turn, establishes a legislative intention to require ownership through final approval because that is the point at which grants are awarded and moneys allocated. At the very least, the EDA's interpretation is a permissible one that warrants our deference.

We further note that the regulatory provision at issue here has been in effect since 2006 without intervention by the Legislature. We take from that state of affairs the Legislature's acquiescence in the EDA's interpretation and an acceptance thereof. *Kibble v. Weeks Dredging & Constr. Co.*, 161 *N.J.* 178, 206, 735 *A.*2d 1142 (1999) (citing *State v. Gonzalez*, 142 *N.J.* 618, 633, 667 *A.*2d 684 (1995); *Lemke v. Bailey*, 41 *N.J.* 295, 301, 196 *A.*2d 523 (1963)). That view is reinforced by the 2010 amendment to the statute mirroring the earlier administrative interpretation. That amendment underscores that the EDA's view is what the Legislature originally intended. *See Edwards, supra*, 3 *N.J.* at 24, 68 *A.*2d 744.

We recognize that TAC has advanced public policy arguments supporting the wisdom of its position—for example, the commercial difficulties inherent in deferring a sale until the entire IPG process has been completed. However, after considering the

various policy issues presented, the Legislature has aligned itself with a continuing ownership requirement. Any contrary view of the wisdom of that approach must be addressed to that lawmaking body.

## VII.

The judgment of the Appellate Division is reversed and the decision of the DEP is reinstated.

JUSTICE RIVERA–SOTO, dissenting.

The judgment of the Appellate Division should be affirmed substantially for the unassailable reasoning well-expressed by Judge Fuentes, *TAC Assocs. v. N.J. Dep't of Envtl. Prot.*, 408 *N.J.Super.* 117, 973 *A.*2d 969 (App.Div.2009). Therefore, I respectfully dissent. I add only the following, focusing on events arising after the filing of that opinion that underscore its correctness.

Plaintiff TAC Associates did not sell the property at issue in this case until 2003. At the time, neither the enabling statute, *N.J.S.A.* 58:10B–6(a)(4), nor the then extant regulations, *N.J.A.C.* 19:31–8.2, required that, as a condition precedent to eligibility, the applicant for an "innocent person" grant continue to own the realty on which the grant application was based. The regulation was not changed until October 2006; in defendants' own words, the regulation was changed so that "[t]he definition of 'innocent person' is amended to reflect that the person must continue to own the real property until final grant approval is given by the [Economic Development] Authority[.]" 38 *N.J.R.* 3001(a) (July 17, 2006). However, the statute under which the regulation was issued had not changed and pointedly did *not* include the continuing ownership requirement that the 2006 regulatory amendment imposed.

Plaintiff made its application for an "innocent person" grant in June 2008; at that time, the regulations contained a condition precedent—the continuing ownership requirement—that glaringly was absent from the enabling statute. In September 2008, plain-

tiff's application for an "innocent person" grant was denied purportedly based on plaintiff's failure to satisfy the regulatory, but not statutory, continuing ownership requirement. Plaintiff appealed that denial and, on July 1, 2009, the Appellate Division held that "the regulatory criteria in *N.J.A.C.* 19:31–8.2 excludes a class of individuals envisioned by the Legislature as eligible to apply for an ["innocent person" grant, and s]uch clear inconsistency between regulation and statute compels that we invalidate the regulation as *ultra vires.*" *TAC Assocs., supra,* 408 *N.J.Super.* at 123, 973 *A.*2d 969 (citing *In re Freshwater Wetlands Prot. Act Rules,* 180 *N.J.* 478, 488–89, 852 *A.*2d 1083 (2004)).

Defendants sought certification before this Court on August 31, 2009, which was granted on December 14, 2009. *TAC Assocs. v. N.J. Dep't of Envtl. Prot.,* 200 *N.J.* 549, 985 *A.*2d 647 (2009). It was not until more than one month later, on January 17, 2010, that the Legislature at long last conformed its statute to the regulatory language adopted in 2006. *See L.* 2009, *c.* 303, § 1 (eff. Jan. 17, 2010).

The Appellate Division correctly "recognize[d] that both sides here have advanced strong public policy arguments in support of their respective positions." *TAC Assocs., supra,* 408 *N.J.Super.* at 124, 973 *A.*2d 969. It further explained that "public policy arguments in favor or against a 'continuing ownership' requirement to an ["innocent person" grant] are better suited for a legislative forum than an appellate courtroom." *Ibid.* In those circumstances, it viewed its charter both properly and with due modesty: "Our role is to enforce the will of the Legislature. Given the clear inconsistency between the statutory and regulatory criteria presented here, we are compelled to invalidate the regulation. Statutes cannot be amended by administrative fiat." *Ibid.* It therefore held that "the definition of 'innocent party' in *N.J.A.C.* 19:31–8.2 is inconsistent with the statutory definition in *N.J.S.A.* 58:10B–6(b)(4)[ and] declare[d] *N.J.A.C.* 19:31–8.2 *ultra vires* and invalid." *Ibid.*

The unvarnished and ugly truth is that, recognizing their error, defendants scurried—four years after the fact, six and one-half

months after their position had been rebuffed by the Appellate Division, and while this appeal was pending before this Court—to have the Legislature ratify rules defendants adopted that plainly exceeded the original statutory mandate. That fact alone demonstrates conclusively that defendants' actions in 2006 in adopting the "continuing ownership" requirement unlawfully exceeded that which the statute itself required; to conclude differently would render the Legislature's January 2010 amendatory language mere surplusage. Against that backdrop, to demand that plaintiff comply with a requirement that on its face was unlawful at the time plaintiff made its otherwise proper application borders on the Kafkaesque. Because the proper yardstick against which plaintiff's application should be gauged is the statute at the time the application was made, the "continuing ownership" requirement held no relevance here and cannot, by the wave of a judicial wand, be retrofitted once plaintiff's rights vested.[1]

I respectfully dissent.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*For affirmance*—Justice RIVERA-SOTO—1.

---

[1] The majority accuses both the Appellate Division and this dissent of "completely miss[ing] the ownership language in *N.J.S.A.* 58:10B-6" and of "fail[ing] to consider that plain statutory provision." *Ante* at 543 n. 6, 998 A.2d at 456 n. 6. It is ironic that it is the majority's myopia that ends up begging the question presented: if the statute as enacted in 1993 meant what the majority today says it means, then why, pray tell, did the agency charged with its implementation— an entity to which we defer as "administrative agency interpretations of [an enabling statute] must be given substantial weight in an interpretive calculus[,]" *Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist.*, 199 *N.J.* 14, 29, 970 A.2d 354 (2009)—see the need thirteen years later, in 2006, to amend its own regulations to add a qualification requirement that was not made part of the statute until four years after that? In short, that is the point ignored here, one that the majority chooses to gloss over and that lies at the core of this dissent.