**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3767-18T1

HARTZ MOUNTAIN
INDUSTRIES, INC.,

     Appellant,

v.

NEW JERSEY SPORTS &
EXPOSITION AUTHORITY,

     Respondent.

_____

Argued telephonically May 28, 2020 –
Decided July 16, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from the New Jersey Sports & Exposition Authority, Resolution No. 2019-07.

Thomas Joseph Trautner, Jr. argued the cause for appellant (Chiesa Shahinian & Giantomasi PC, attorneys; Thomas Joseph Trautner, Jr., Brigitte M. Gladis James Robert Hearon and Ronald Lawrence Israel, on the briefs).

Nicholas G. Seminoff, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal,

Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Nicholas G. Seminoff, on the brief).

PER CURIAM

On February 5, 2015, the Legislature passed the Hackensack Meadowlands Agency Consolidation Act (the Act), N.J.S.A. 5:10A-1 to 5:10A-85, to, inter alia, consolidate the New Jersey Sports and Exposition Authority [NJSEA] and the New Jersey Meadowlands Commission, "the two agencies with the common interest of promoting the economic growth of the meadowlands and northern New Jersey[.]" N.J.S.A. 5:10A-2(h). From that date forward, "any reference in any law, rule, regulation, order, contract, or document to the Hackensack Meadowlands Development Commission or the New Jersey Meadowlands Commission shall mean and refer to the [NJSEA]." N.J.S.A. 5:10A-4.

In November 2018, Dredge Management Associates, LLC, (Dredge Management) submitted an application for a zoning certificate to the NJSEA to clear and grub an undeveloped 138-acre parcel located on Block 227, Lot 9 (Mori Tract) of the Hackensack Meadowlands District (District). Dredge Management's purpose was to investigate the feasibility of constructing a large-scale development on this site. On March 21, 2019, the Board of Commissioners

of the NJSEA passed Resolution 2019-07 and declared that the development of the Mori Tract was a "vital project" under N.J.S.A. 5:10A-11(f).[1]

Hartz Mountain Industries Incorporated (Hartz) appeals from the NJSEA's decision to pass this resolution, arguing the designation of the Mori Tract's development as a "vital project" based only upon a zoning certificate application limited to clearing and grading the site is arbitrary, capricious, and unreasonable. Stated differently, an undertaking that involves only clearing and grading a site is not a "project" within the meaning of N.J.S.A. 5:10A-11(f). In response, the NJSEA argues the statute's plain language does not require "a formal application for development before it may declare future development projects as vital projects."

Based on the record presented by the parties and mindful of prevailing standards of review together with this land's troubled environmental history, we affirm.

---

[1] Pursuant to N.J.S.A. 5:10A-11(f), the NJSEA has "sole jurisdiction over any project it deems, in its sole discretion, to be vital to the public safety, general welfare, development, or redevelopment of the [D]istrict."

A-3767-18T1

# I

The Mori Tract is an undeveloped 138-acre parcel located within the District.[2] The Mori Tract is primarily comprised of tidal wetlands and open waters. To the west of the Mori Tract is Harmon Meadow's mixed-use commercial development and Park Plaza Drive. Paterson Plank Road, "a major transportation corridor connector between Route 1 & 9/Tonnele Avenue and Route 3," is located to the south of the Mori Tract.

Currently, the Mori Tract is subject to two unresolved NJSEA zoning violations relating to illegally-contaminated fills. One illegal fill area "is located on the upland portion of the site[,]" and the other is located in a northeasterly portion of the property, within the environmental conservation zone, where tidal wetlands exist. The New Jersey Department of Environmental Protection (NJDEP) and the United States Army Corps of Engineers issued separate violations pertaining to these illegal fills.

Inspections conducted by the NJDEP in 2011 and 2012 indicated that approximately "24,000 to 33,000 cubic yards of solid waste, consisting of crushed concrete, cinderblocks, crushed asphalt . . ." and other materials were

---

[2] N.J.S.A. 5:10A-3 defines "[D]istrict" as "the area delineated within section [N.J.S.A.] 5:10A-5."

present at this site without any authorization. The inspection also disclosed an unresolved NJDEP violation from the 1980s stemming from "a large volume of illegally-placed asbestos waste on the site, estimated to be in excess of 2,000 cubic yards."

On July 18, 2018, Dredge Management entered into a ninety-eight-year long term lease agreement with the Mori Revocable Trust to develop 155 acres of vacant land. The Mori Tract was included in this lease agreement. Under this lease agreement, Dredge would have and hold the Mori Tract until July 17, 2116. Dredge Management filed a "zoning certificate/occupancy certification application" previously with the NJSEA on November 5, 2018, requesting permission to perform "minor site improvement[s]" upon the Mori Tract by "[c]learing, grubbing, [and] grading" the property. Dredge Management also created a Site Plan depicting the Mori Tract and a preliminary plan for future development of this property.

In a letter dated November 16, 2018 addressed to Sara Sundell, the NJSEA's Chief Engineer and Director of Land Use Management, the consulting engineers retained by Dredge Management provided the following description of the scope of the project:

> Dredge is investigating development opportunities for the property. As you may be aware, the southernmost

portion of the property in the RC zone of approximately 34 acres is covered with upland vegetation as a result of it being above the flood hazard elevation associated with Cromakill Creek. <u>As a first step towards the development of the property</u>, Dredge has determined to clear the property of vegetation, grub the site and generally grade the property including an existing outcrop of historic fill. There are no plans at this time to import fill to the site.

[(emphasis added).]

Before the NJSEA convened to assess the merits of Dredge's project, Hartz submitted a letter opposing the project and objecting to the characterization of the Mori Tract development as a "vital project." Hartz argued the NJSEA was about to conduct a vital project assessment before Dredge Management submitted a formal project application. According to Hartz, "[n]othing submitted with this application confirms the nature of the ultimate development contemplated by Dredge Management . . . and nothing commits Dredge Management . . . to any particular project."

The NJSEA conducted a "vital project assessment" on February 21, 2019 to determine if the "minor site improvements" to be performed by Dredge Management constituted a "vital project" pursuant to N.J.S.A. 5:10A-11(f). In a memorandum provided to the NJSEA Board Members, Sundell, and Senior Vice President/COO Christine A. Sanz described the Criteria for Designation of

Vital Projects within the District.  Sundell and Sanz explained that pursuant to N.J.S.A. 5:10A-11(f), the NJSEA maintains sole jurisdiction over certain vital projects that meet one or more of the following criteria:

> A. Projects that enhance public safety.
>
> B. Projects that promote the general welfare.
>
> C. Projects that have a substantial impact on the environment.
>
> D. Development projects of regional economic importance.
>
> E. Development projects with regional impacts on flood control, stormwater infrastructure and/or other critical infrastructure.
>
> F. Development projects with significant regional traffic/transportation impacts.
>
> G. Redevelopment projects within a District redevelopment area.

The NJSEA determined that Dredge Management's development plan satisfied all these criteria, except factor G.  The Commissioners found Dredge Management's development project would: enhance public safety and benefit the environment; finally resolve the Mori Tract's long-standing violations; remediate an illegally placed fill; and cap a historic fill.  It would also promote the general welfare by eliminating an environmentally compromised site and

generate economic development. Further, the Commissioners found Dredge Management's development on the upland portion of the Mori Tract would economically benefit Secaucus because it would create permanent jobs and temporary construction jobs.

In the brief submitted on behalf of the NJSEA, the Attorney General points out the inconsistency of Hartz's position in this case. Although the Mori Property remains undeveloped, Hartz developed a significant portion of the neighboring property it owned under an April 17, 2003 conditional zoning certificate which authorized the construction of a Wal-Mart, a Sam's Club, and other related on-site improvements west of Cromakill Creek. Among the conditions imposed to approve this development, Hartz is required to permit a "connection from its approximately sixty-five-acre mixed-use property at Harmon Meadow to the adjacent Mori Property if and when the Mori Property was ever developed."

On March 21, 2019, the NJSEA's Commissioners met to consider comments from the public and NJSEA staff on the question of whether it should exercise its discretionary authority under N.J.S.A. 5:10A-11(f) and assert sole zoning jurisdiction over the development of the Mori Tract. Hartz's representative attended this meeting and again raised the concerns expressed in

8

its objection letter. The Commissioners approved Resolution 2019-07 and classified the Mori Tract's development as a "vital project" under N.J.S.A. 5:10A-11(f).

## II

As an appellate court, our scope of review of a decision made by an administrative agency is limited. Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011). We are bound to uphold an agency's quasi-judicial decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). The Supreme Court established the following "three channels of inquiry" to guide our appellate review:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Herrmann, 192 N.J. at 28 (citing Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

Of particular relevance here, appellate courts should "accord substantial deference to the interpretation an agency gives to a statute that the agency is

9

charged with enforcing." Ge Solid State v. Director, Division of Taxation, 132 N.J. 298, 306 (1993). We also apply an enhanced deferential standard of review when the agency's decision involves "predictive or judgmental determinations" that implicate the agency's administrative expertise. In re Proposed Quest Academy Charter School of Montclair Founders Group, 216 N.J. 370, 389 (2013).

When we construe a statute, we give the words used by the Legislature "their ordinary meaning and significance" and read all the relevant parts together "to give meaning to the whole of the statute." Nicholas v. Mynster, 213 N.J. 463, 480 (2013). If reading the plain language of the statute "leads to a clear and unambiguous result, then the interpretive process is over." TAC Associates v. New Jersey Dept. of Environmental Protection, 202 N.J. 533, 541 (2010). This approach allows us to "construe the statute sensibly and consistent with the objectives that the legislature sought to achieve." Nicholas, 213 N.J. at 480. We reverse an agency's determination only when it "flout[s] the statutory language and undermine[s] the intent of the legislature." Ge Solid State, 132 N.J. at 306.

Pursuant to N.J.S.A. 5:10A-11(a), a constituent municipality located within the District that adopts the NJSEA's "master plan, zoning regulations, codes, and standards shall review and approve applications for the development,

improvement, redevelopment, construction, or reconstruction on land in the [D]istrict."  Although certain municipalities retain the authority to approve or deny these applications, the NJSEA may assert "sole jurisdiction over any project it deems, in its sole discretion, to be vital to the public safety, general welfare, development, or redevelopment of the [D]istrict." N.J.S.A. 5:10A-11(f) (emphasis added). The Legislature defined "project" as "any application for development, plan, work, or undertaking by the [NJSEA], constituent municipality, or redeveloper, pursuant to the master plan or a redevelopment plan."  N.J.S.A. 5:10A-3(2)

Here, the NJSEA acted within its statutory authority by declaring the work to be performed upon the Mori Tract a "vital project" under N.J.S.A. 5:10A-11(f).  A plain reading of N.J.S.A. 5:10A-3(2) "clear[ly] and unambiguous[ly]" indicates that a formal application for a major development upon a parcel is not required for a requested action to qualify as a "project."  N.J.S.A. 5:10A-3(2); Nicholas, 213 N.J. at 480; TAC Associates, 202 N.J. at 541.  The statute defines "project" broadly, allowing for the definition to encompass other "development, plan, work, or undertaking." N.J.S.A. 5:10A-3(2); TAC Associates, 202 N.J. at 541.

Dredge Management's application to grub, grade, and clear vegetation from the Mori Tract qualifies as a "project" under this statute because Dredge Management's requested actions qualify as a "development, plan, work, or undertaking." N.J.S.A. 5:10A-3(2). Our legislature has not established a minimum amount of development or work needed to qualify as a "development, plan, work, or undertaking." Ibid. Thus, although they are "minor site improvement[s]," Dredge Management's requested actions satisfy the requirement to perform some sort of "development, plan, work, or undertaking" for a "project" classification under N.J.S.A. 5:10A-3(2).

Additionally, Dredge Management's application qualifies as a project because its requested actions are being done "[a]s a first step towards the development of the [Mori Tract]." To be classified as a project, an applicant's "development, plan, work, or undertaking" must be done "pursuant to the master plan or a redevelopment plan." Ibid. Dredge Management's planned "minor site improvement[s]" qualify as a "project" under N.J.S.A. 5:10A-3(2) because, as explained in its application, these improvements are the first step towards redeveloping the Mori Tract. Accordingly, the NJSEA properly exercised its discretionary authority when it deemed the development of the Mori Tract a vital project under N.J.S.A. 5:10A-11(f).

12

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13