NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1346-17T2

SCOTT ROGOW, Deceased,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

      Respondent-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 22, 2019**
>
> **APPELLATE DIVISION**

Argued February 28, 2019 – Decided March 26, 2019

Before Judges Simonelli, Whipple and Firko.

On appeal from the Board of Trustees, Police and
Firemen's Retirement System, PFRS No. 3-10-42927.

Craig S. Gumpel argued the cause for appellant Lynne
Rogow.

Amy Chung, Deputy Attorney General, argued the
cause for respondent (Gurbir S. Grewal, Attorney
General, attorney; Melissa H. Raksa, Assistant
Attorney General, of counsel; Danielle P. Schimmel,
Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SIMONELLI, P.J.A.D.

Scott Rogow (Rogow) was a firefighter with the City of Paterson (City) who retired on an accidental disability retirement allowance under N.J.S.A. 43:16A-7 and received his monthly retirement allowance until his death. Rogow's children and widow, appellant Lynne Rogow, received survivor accidental disability retirement benefits after Rogow's death pursuant to N.J.S.A. 43:16A-7(3). Approximately four years after Rogow's death, appellant requested that the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS) amend Rogow's pension status so that she could receive the enhanced survivor accidental death benefits under N.J.S.A. 43:16A-10. Appellant appeals from the Board's October 19, 2017 final agency decision denying reconsideration of its May 12, 2017 denial of her request. We affirm.

I.

We begin with a review of the pertinent authority. The PFRS Act, N.J.S.A. 43:16A-1 to -68, and corresponding regulations N.J.A.C. 17:4-6.1 to -6.18, govern the PFRS.

General Provisions

N.J.S.A. 43:16A-1 contains the following pertinent definitions:

> (3) "Member" shall mean any . . . fireman included in the membership of the retirement system pursuant to this amendatory and supplementary act . . . .

. . . .

(7) "Service" shall mean service as a . . . fireman paid for by an employer.

. . . .

(11) "Annuity" shall mean payments for life derived from the aggregate contributions of a member.

(12) "Pension" shall mean payments for life derived from contributions by the employer.

(13) "Retirement allowance" shall mean the pension plus the annuity.

. . . .

(16) "Retirement" shall mean <u>the termination of the member's active service with a retirement allowance granted and paid under the provisions of this act</u>.

[(Emphasis added).]

N.J.A.C. 17:4-6.7(a)(1) provides that "[a] 'member in service' means that the member or the employer was making pension contributions to the retirement system at the time of filing the application for a disability retirement allowance."

N.J.A.C. 17:4-6.1 governs the retirement application process. N.J.A.C. 17:4-6.1(a) provides that "[a] member's retirement application becomes effective on the first of the month following receipt of the application unless a future date is requested." N.J.A.C. 17:4-6.2 provides that a member's retirement

3

allowance becomes due and payable "[thirty] days after the date the Board approved the application for retirement or one month after the date of the retirement, whichever is later."  N.J.A.C. 17:4-6.3(a) provides:

> Except as provided by N.J.A.C. 17:4-6.7, a member shall have the right to withdraw, cancel or change an application for retirement at any time before the member's retirement allowance becomes due and payable by sending a written request signed by the member.  Thereafter, the retirement shall stand as approved by the Board.
>
> [(Emphasis added).]

### Accidental Disability Retirement Allowance and Survivor Accidental Disability Retirement Death Benefits

N.J.S.A. 43:16A-7 governs retirement on an accidental disability retirement allowance.  N.J.S.A. 43:16A-7(2) provides:

> Upon retirement for accidental disability, a member shall receive an accidental disability retirement allowance which shall consist of:
>
> (a) An annuity which shall be the actuarial equivalent of his aggregate contributions and
>
> (b) A pension in the amount which, when added to the member's annuity, will provide a total retirement allowance of [two-thirds] of the member's actual annual compensation for which contributions were being made at the time of the occurrence of the accident or at the time of the member's retirement, whichever provides the largest possible benefit to the member.

4

N.J.S.A. 43:16A-7(3) governs survivor accidental disability retirement death benefits:

> Upon receipt of proper proofs of the death of a member who has retired on accidental disability retirement allowance, there shall be paid to such member's beneficiary, an amount equal to [three and one-half] times the compensation upon which contributions by the member to the annuity savings fund were based in the last year of creditable service; provided, however, that if such death shall occur after the member shall have attained [fifty-five] years of age the amount payable shall equal [one-half] of such compensation instead of [three and one-half] times such compensation.
>
> [(Emphasis added).]

Survivor Death Benefits

N.J.S.A. 43:16A-9(1) provides for payment of death benefits to the survivor of a PFRS member who dies from non-accidental means while in active service:

> Upon the receipt of proper proof of the death of a member in active service on account of which no accidental death benefit is payable under [N.J.S.A. 43:16A-10] there shall be paid to such member's widow or widower a pension of [fifty percent] of final compensation for the use of himself or herself and children of the deceased member, to continue during his or her widowhood; if there is no surviving widow or widower or in the case the widow or widower dies or remarries, [twenty percent] of final compensation will be payable to one surviving child, [thirty-five percent]

5

of final compensation to two surviving children in equal shares and if there be three or more children, [fifty percent] of final compensation will be payable to such children in equal shares.

In the event of death occurring in the first year of creditable service, the benefits, payable pursuant to this subsection, shall be computed at the annual rate of compensation.

If there is no widow or widower or child, [twenty-five percent] of final compensation will be payable to one surviving parent or [forty percent] of final compensation will be payable to two surviving parents in equal shares.

[(Emphasis added).]

N.J.S.A. 43:16A-9(5)(a) addresses when a member is deemed an active member

of the PFRS for eligibility purposes:

For the purposes of this section and [N.J.S.A. 43:16A-10(5)], a member of the [PFRS] shall be deemed to be an active member for a period of no more than [ninety-three] days while on official leave of absence without pay when such leave is due to any reason other than illness, and for a period of not more than one year in the event of an official leave (a) due to the member's maternity, or (b) to fulfill a residency requirement for an advanced degree, or (c) as a full-time student at an institution of higher education, and (1) while he is disabled due to sickness or injury arising out of or in the course of his employment as a member to whom this act applies, is not engaged in any gainful occupation, and is receiving or entitled to receive periodic benefits (including any commutation of, or substitute for, such benefits) for loss of time on account of such disability

A-1346-17T2

under or by reason of workmen's compensation law, occupational disease law or similar legislation <u>and has not retired or terminated his membership</u>; or (2) for a period of no more than two years while on official leave of absence without pay if satisfactory evidence is presented to the retirement system that such leave of absence without pay is due to the member's personal illness other than an illness to which (1) above applies.

[(Emphasis added).]

N.J.S.A. 43:16A-9(5)(b) addresses the timing of the member's death:

If a member dies within [thirty] days after the date of retirement or the date of board approval, whichever is later, a death benefit shall be payable only if he is deemed to be an active member in accordance with this section; provided, however, a member applying for disability benefits shall be deemed an active member if he was covered by the death benefit provisions of the act at the termination of employment, filed the application for disability retirement with the retirement system within [thirty] days following such termination of employment and dies within [thirty] days after the date of retirement or the date of board approval, whichever is later. If a member files an application for disability retirement while in service and otherwise meets the requirements for disability retirement, but dies before the retirement takes effect, the retirement shall be considered effective.

Survivor Accidental Death Benefits

N.J.S.A. 43:16A-10(1) provides for payment of survivor accidental death benefits "[u]pon the death of <u>a member in active service</u> as a result of . . . an

accident met in the actual performance of duty at some definite time and place[.]" (Emphasis added).  N.J.S.A. 43:16A-10(2) provides, in pertinent part:

> Upon the receipt of proper proofs of the death of a member on account of which an accidental death benefit is payable, there shall be paid to his widow or widower a pension of [seventy percent] of the compensation, upon which contributions by the member to the annuity savings fund were based in the last year of creditable service, for the use of herself or himself and the children of the deceased member; if there is no surviving widow or widower or in case the widow or widower dies, [seventy percent] of such compensation will be payable to the member's surviving child or surviving children in equal shares.

N.J.S.A. 43:16A-10(5) provides:

> In addition to the foregoing benefits payable under [N.J.S.A. 43:16A-10(2)], there shall also be paid in one sum to such beneficiary, if living, as the member shall have nominated by written designation duly executed and filed with the retirement system, otherwise to the executor or administrator of the member's estate, an amount equal to [three and one-half] times the compensation upon which contributions by the member to the annuity savings fund were based in the last year of creditable service.

Further, N.J.S.A. 43:16A-10(6) provides:

> In addition to the foregoing benefits, the State shall pay to the member's employer-sponsored health insurance program all health insurance premiums for the coverage of the member's surviving widow or widower and dependent children.

8

Unlike, N.J.S.A. 43:16A-9(5)(b), N.J.S.A. 43:16A-10 contains no language regarding the timing of the member's death.

## II.

We now turn to the facts of this case. Rogow suffered a work-related injury on July 6, 2009. On October 28, 2010, Rogow submitted an application for an accidental disability retirement allowance. On May 2, 2011, the Board approved Rogow's application, effective November 1, 2010. Rogow remained on the City's payroll through May 2011. On June 1, 2011, Rogow began receiving an accidental disability retirement allowance of $5,238.88 per month.

Rogow died on August 28, 2012. After receiving notice of Rogow's death, on September 20, 2012, the Division of Pensions and Benefits (Division) notified appellant that she would receive a survivor accidental disability retirement benefit of $3,884.06 per month for the rest of her life or until she remarried, plus a group life insurance benefit in the amount of $326,261.64. In addition, Rogow's two minor children would each receive $971.02 per month. In October 2012, appellant and the children began receiving their monthly benefits. Appellant also received the $326,261.64 group life insurance benefit. The children's monthly benefits terminated on July 1, 2017. By that time, they had received a total of $114,580.36.

Appellant filed a dependency petition with the Division of Workers' Compensation for compensation for Rogow's death under N.J.S.A. 34:15-7. On August 11, 2016, a judge of compensation found Rogow's death was causally related to his employment with the City and dependency benefits were payable pursuant to N.J.S.A. 34:15-13. The judge approved a settlement providing dependency benefits to appellant and the children totaling $347,850.

Appellant also filed a claim with the Public Safety Officers' Benefits (PSOB) Office.[1] On September 9, 2016, the PSOB Office found Rogow's death was covered under the PSOB Act, 42 U.S.C. §§ 3796 to 3796d-7,[2] and was a direct and proximate result of an injury sustained in the line of duty. The PSOB Office concluded appellant was entitled to $161,517.66, and each of the children were entitled to $53,839.29.

On September 6, 2016, approximately six years after Rogow's effective retirement date and approximately four years after his death, appellant filed a request with the Board to amend Rogow's "pension status from 'accident[al]

---

[1] The record does not reveal the date appellant filed the dependency petition with the Division of Workers' Compensation or the claim with the PSOB.

[2] The PSOB Act has been transferred to 34 U.S.C.A. §§ 10281 to 10308.

disability' to 'line of duty death'" pursuant to N.J.S.A. 43:16A-10. Appellant provided no explanation for the delay in making this request.

The request was referred to the Division for administrative review. On January 24, 2017, the Division denied the request administratively. Quoting the language in N.J.A.C. 17:4-6.3(a),[3] the Division found Rogow was approved for an accidental disability retirement allowance, effective November 1, 2010; Rogow began receiving his retirement allowance on July 1, 2011; and appellant had been receiving her survivor accidental disability retirement benefits since October 2012.

Appellant appealed the Division's decision. On May 8, 2017, the Board denied the appeal. In a May 12, 2017 written decision, the Board found N.J.S.A. 43:16A-10(1) requires that the death of the PFRS member must occur while in active service, and Rogow was not eligible for accidental death benefits because he was retired and receiving an accidental disability retirement allowance at the time of his death.

---

[3] The Division incorrectly cited N.J.A.C. 17:2-6.3(a), which governs the Public Employees' Retirement System; however, it is clear the Division was referring to N.J.A.C. 17:4-6.3(a).

Appellant requested reconsideration of the Board's decision. In an October 19, 2017 final agency decision, the Board denied reconsideration, reiterating as follows:

> As an active member [] Rogow applied for and was granted an [a]ccidental disability retirement. At that point his status was no longer an active participant, but [] Rogow was a retiree of PFRS. As a matter of law, the Board denied [appellant's] request in accordance with [N.J.S.A.] 43:16A-10 which requires that the death of the PFRS member must occur while the member is in active service. Because [] Rogow was retired and receiving [a]ccidental disability benefits he is not eligible for [a]ccidental death benefits.

The Board acknowledged that the term "active service" is not specifically defined in N.J.S.A. 43:16A-10, but cited the definition of "service" in N.J.S.A. 43:16A-1 that "'[s]ervice' shall mean service as a . . . fireman paid for by an employer." The Board also noted that N.J.S.A. 43:16A-9(5)(a) provides that a PFRS member is in active service if he has not retired or terminated his membership.

The Board determined that the history of N.J.S.A. 43:16A-10 revealed a legislative intent to narrow the eligibility for accidental death benefits and require that such benefits be awarded only upon the death of a member who was in active service. The Board explained:

12

A review of the history of [N.J.S.A.] 43:16A-10 indicates that prior to 1967, an [a]ccidental death benefit was awarded "[u]pon the accidental death of a member before retirement." L. 1964, c. 241, §7 (emphasis added). Thus, a death benefit was payable so long as no retirement application was filed, even if the member had left service and was not contributing to the system. In 1967, the language of [N.J.S.A.] 43:16A-10 was amended to provide the benefit "[u]pon the death of a member in active service." L. 1967, c. 250 (Chapter 250), § 10 (emphasis added). Chapter 250's definition of the term "retirement" further indicates . . . the Legislature's intent to narrow the eligibility for an accidental death benefit. It defined "[r]etirement" as "withdrawal from active service with a retirement allowance granted under [the PFRS statutes]."

The Board also determined that "[b]y the plain language of [N.J.S.A.] 43:16A-10(1), the Legislature intended that an accidental death benefit only be available to those members who are in 'active service' at the time of death and had not yet retired."

### III.

On appeal, appellant contends the Board's decision was arbitrary, capricious and unreasonable because it incorrectly found N.J.S.A. 43:16A-10(1) requires that the death of the PFRS member must occur while in active service. Appellant also contends the history of N.J.S.A. 43:16A-10 does not support the Board's decision.

13

Our review of the Board's decision is limited. <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011). We will not disturb the Board's decision absent "a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." <u>Ibid.</u> (quoting <u>In re Herrmann</u>, 192 N.J. 19, 27-28 (2007)). "However, because 'questions of law are the province of the judicial branch,' we are 'in no way bound by [the Board's] interpretation of a statute or its determination of a strictly legal issue . . . .'" <u>Ibid.</u> (citation omitted) (quoting 37 Steven L. Lefelt et al., <u>New Jersey Practice</u>, § 7.19 (2d ed. 2000); <u>Mayflower Sec. Co. v. Bureau of Sec.</u>, 64 N.J. 85, 93 (1973)). We review an issue of statutory interpretation de novo. <u>McGovern v. Rutgers</u>, 211 N.J. 94, 108 (2012). Because this appeal involves the Board's interpretation of N.J.S.A. 43:16A-10(1), our review is de novo.

"When interpreting a statute, our main objective is to further the Legislature's intent." <u>In re Pontoriero</u>, 439 N.J. Super. 24, 35 (App. Div. 2015) (quoting <u>TAC Assocs. v. N.J. Dep't of Envtl. Prot.</u>, 202 N.J. 533, 540 (2010)). Toward that end, the plain language of the statute provides the starting point for the analysis. <u>In re Kollman</u>, 210 N.J. 557, 568 (2012). The language of the statute must be construed in accordance with its ordinary and common sense meaning. <u>State ex rel. K.O.</u>, 217 N.J. 83, 91 (2014). "If the language is clear

on its face, courts should enforce [the statute] according to its terms." Bermudez v. Kessler Inst. for Rehab., 439 N.J. Super. 45, 51 (App. Div. 2015) (alteration in original) (quoting Perrelli v. Pastorelle, 206 N.J. 193, 199-201 (2011)).

The language of N.J.S.A. 43:16A-10(1) is clear on its face. The statute expressly provides that accidental death benefits are payable "[u]pon the death of a member in active service." (Emphasis added). First, Rogow was not a "member in service" at the time of his death, as he and the City were not making pension contributions to the PFRS at that time. See N.J.A.C. 17:4-6.7(a)(1) ("A 'member in service' means that the member or the employer was making pension contributions to the retirement system at the time of filing the application for a disability retirement allowance").

Second, although N.J.S.A. 43:16A-10 does not specifically define "active service," it is clear that Rogow also was not in "active service" at the time of his death. The term "active" is defined, in part, as "engaged in full-time service esp[ecially] in the armed forces." Merriam-Webster's Collegiate Dictionary 13 (11th ed. 2014). N.J.S.A. 43:16A-1(7) defines "service" as "service as a . . . fireman paid for by an employer." At the time of his death, Rogow was not engaged in full-time service as a fireman and was no longer on the City's payroll.

15

Moreover, Rogow's active service terminated upon his retirement.  See N.J.S.A. 43:16A-1(16) ("Retirement" means "the termination of the member's active service with a retirement allowance granted and paid under the provisions of this act.").  Further, a PFRS member is not deemed to be an active member if he has retired.  See N.J.S.A. 43:16A-9(5)(a) ("[A] member of the [PFRS] shall be deemed to be an active member . . . [if he] has not retired or terminated his membership").  Rogow's retirement terminated his active service as of June 1, 2011, when he began receiving an accidental disability retirement allowance.

Accordingly, we conclude that a member who is retired and receiving a retirement allowance from the PFRS at the time of his death is not "a member in active service" and thus is not entitled to accidental death benefits under N.J.S.A. 43:16A-10.

Appellant attempts to overcome this conclusion by arguing that if the Legislature intended for N.J.S.A. 43:16A-10 to be based on the timing of a member's death and to require that the death occur while in active service, it would have included timing of death language in the statute similar to the language in N.J.S.A. 43:16A-9.  Appellant posits that because of this omission, the only relevant issue in determining eligibility for an accidental death benefit

16

is whether the death was the result of the member's injury that occurred in the line of duty.  We disagree.

"Ordinarily, we are enjoined from presuming that the Legislature intended a result different from the wording of the statute or from adding a qualification that has been omitted from the statute."  DiProspero v. Penn, 183 N.J. 477, 493 (2005).  Thus, "[a] court should not 'resort to extrinsic interpretive aids' when 'the statutory language is clear and unambiguous, and susceptible to only one interpretation . . . .'"  Id. at 492 (quoting Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004)).

"When the plain meaning is unclear or ambiguous, we next consider extrinsic evidence of the Legislature's intent, including legislative history and statutory context."  Pontoriero, 439 N.J. Super. at 36; see also Bermudez, 439 N.J. Super. at 50.  "Likewise, interpretations of the statute and cognate enactments by agencies empowered to enforce them are given substantial deference in the context of statutory interpretation."  Klumb v. Bd. of Educ., 199 N.J. 14, 24 (2009).  "Above all, we 'seek to effectuate the "fundamental purpose for which the legislation was enacted."'"  Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323 (2000) (quoting Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999)).

Appellant's attempt to infer the legislative intent through her comparison of N.J.S.A. 43:16A-9 and N.J.S.A. 43:16A-10 is based on her erroneous application of statutory context, and thereby leads to an incorrect interpretation of legislative intent. We reiterate that N.J.S.A. 43:16A-9(1) provides, in pertinent part:

> Upon the receipt of proper proof of the death of <u>a member in active service</u> on account of which no accidental death benefit is payable under [N.J.S.A. 43:16A-10] there shall be paid to such member's widow or widower a pension of [fifty percent] of final compensation for the use of himself or herself and children of the deceased member . . . .
>
> [(Emphasis added).]

Although appellant is correct that the statute provides death benefits upon the death of a member in active service, that requirement is not dependent on the language in N.J.S.A. 43:16A-9(5), as she claims. N.J.S.A. 43:16A-9(5) sets forth the circumstances under which a member shall be deemed to be an active member under certain sections of the PFRS Act; however, it does not set forth the requirement that a member's death occur while in active service. Rather, as in N.J.S.A. 43:16A-10(1), that requirement appears in the first line of N.J.S.A. 43:16A-9(1). <u>Cf.</u> N.J.S.A. 43:16A-10(1) (accidental death benefits are payable "[u]pon the death of a member in active service"). The statutory language

18

clearly and unambiguously provides that death benefits under both N.J.S.A. 43:16A-9 and N.J.S.A. 43:16A-10 are payable only if the member is "in active service" at the time of death.

In her analysis of the statutory context, appellant fails to recognize the similar language in N.J.S.A. 43:16A-9(1) and N.J.S.A. 43:16A-10(1), and instead focuses on the timing of death requirements in N.J.S.A. 43:16A-9(5)(b). Although those requirements may vary in scope and detail from the requirements of N.J.S.A. 43:16A-10(1), they do not create any ambiguity in the language of N.J.S.A. 43:16A-10(1), nor do they contradict the first line of the statute, which explicitly provides that accidental death benefits are payable "[u]pon the death of a member in active service." Thus, appellant's examination of N.J.S.A. 43:16A-9(5)(b) does not create an ambiguity in N.J.S.A. 43:16A-10 and does not contradict the Board's determination.

Appellant also argues the Board misapplied the legislative history of N.J.S.A. 43:16A-10 because the statute's 1967 amendment did not narrow the eligibility for accidental death benefits, but rather expanded eligibility by eliminating the requirement that the accidental death occur before retirement and choosing language which no longer had a temporal limitation. However, the legislative history shows otherwise.

19

A statute's legislative history is often "rich with clues as to the interpretation of statutory language." TAC Assocs., 202 N.J. at 544. "Furthermore, amendments carry 'great weight' in determining the intention of the original statute." Ibid. (quoting Edwards v. Mayor & Council of Moonachie, 3 N.J. 17, 24-25 (1949)). An examination of the legislative history of N.J.S.A. 43:16A-10, however, does not reveal an intent to reject the ordinary meaning of the present statute's plain language. See ibid. ("We find nothing in th[e] history that would warrant us to reject the ordinary meaning . . . in favor of the far-fetched interpretations forged by [plaintiff].").

In 1964, N.J.S.A. 43:16A-10(1) provided as follows:

> Upon the accidental death of a member before retirement; provided, that evidence shall be submitted to the board of trustees justifying the determination that the natural and proximate cause of such death was an accident met in the actual performance of duty, within [five] years preceding the date of such death, and that such death was not the result of the member's willful negligence, an accidental death benefit shall be payable.
>
> [L. 1964, c. 241, § 7 (emphasis added).]

A 1967 amendment provided as follows:

> Upon the death of a member in active service as a result of an accident met in the actual performance of duty at some definite time and place, and such death was not

the result of the member's willful negligence, an accidental death benefit shall be payable . . . .

[L. 1967, c. 250, § 10 (emphasis added).]

Although "amendments carry 'great weight' in determining the intention of the original statute[,]" TAC Assocs., 202 N.J. at 542, the Legislature's intent is not clear from the 1967 amendment alone. See Klumb, 199 N.J. at 28 ("We are no more enlightened regarding the intent of the Legislature by the language changes in the statute . . . than by the words of the statute itself."). Thus, "discerning the meaning of the statute requires further inquiry into other extrinsic evidence." Ibid.

While the Legislature has not amended the language at issue since 1967, the subsequent legislative history of the statute is instructive in determining the Legislature's intent. Notably, the Legislature has often reinforced the requirement that accidental death benefits are payable only when a PFRS member's death occurs while in active service.

In 2002, the Legislature amended N.J.S.A. 43:16A-10 to allow a member's surviving spouse to remarry without losing accidental death benefits. In its statement to the bill, which proposed this amendment, the Senate State Government Committee noted that prior to the amendment, "the surviving spouse of a member of the [PFRS] . . . who died in active service as a result of

accident met in the actual performance of duty lo[st] the accidental death benefit pension if he or she remarrie[d]."  S. Comm. Statement to S.B. 1434 (June 6, 2002) (emphasis added).  Similarly, in support of a 2008 amendment, which extended accidental death benefits to members of other public retirement systems, the Senate Budget and Appropriations Committee noted:

> [a]s amended, the bill provides the same benefits to the survivors of an active member the [PFRS], the State Police Retirement System (SPRS), the Public Employees' Retirement System (PERS), or the Teachers' Pension and Annuity Fund (TPAF), who dies as a result of service in either the reserve component of the Armed Forces of the United State or the National Guard while on federal active duty as are currently provided to an active member of the respective retirement system, who dies as a result of an accident sustained in the actual performance of duty.
>
> [Assemb. Comm. Statement to Assemb. B. 770 (Oct. 6, 2008) (emphasis added).]

The Committee Statement further noted that "[c]urrent law provides death benefits and other increased benefits to survivors of PFRS . . . members who die while active members as a result of an accident met in the actual performance of duty."  Ibid. (emphasis added).

In 2016, after Rogow's death, the Legislature further amended N.J.S.A. 43:16A-10 by increasing the accidental death benefit to seventy percent of final compensation for a member's surviving child or children.  S. 2061 (2016).  In

doing so, the Legislature explicitly noted that the bill "enhances benefits provided in . . . the PFRS upon the accidental death of a member in active service." Legis. Fiscal Estimate to S.B. 2061 (June 22, 2016) (emphasis added).

In 1967, the Legislature changed the introductory language of N.J.S.A. 43:16A-10(1) from "[u]pon the accidental death of a member before retirement" to "[u]pon the death of a member in active service."  Although it is initially unclear whether the Legislature intended this amendment to narrow or broaden the requirements for accidental death benefits, the subsequent legislative history clearly indicates the Legislature's intent to limit the statute's reach to members who were in active service at the time of their death.

Furthermore, the legislative history contains nothing from which we can conclude that the Legislature sought to permit payment of accidental death benefits to a PFRS member who had retired and was receiving an accidental disability retirement allowance at the time of his death.  Had the Legislature intended to do so, it would have omitted the language providing that such benefits be payable "[u]pon the death of a member in active service[.]" N.J.S.A. 43:16A-10(1) (emphasis added); see Bermudez, 439 N.J. Super. at 56 (noting if the Legislature intended to apply the requirements of the Nursing Home Act to

A-1346-17T2

other institutions, it would have used a more inclusive term in the title and text of the legislation).

Accordingly, we conclude the Board properly determined that Rogow was ineligible for accidental death benefits because he was not a member in active service at the time of his death, as required by N.J.S.A. 43:16A-10, but was retired and receiving an accidental disability retirement allowance. The legislative history supports the Board's decision.

## IV.

Appellant contends the Board's decision was arbitrary, capricious and unreasonable because the Board failed to follow its own precedent in Lake v. Police & Firemen's Retirement System, 2005 N.J. AGEN LEXIS 961 (Dec. 30, 2005) and Estock v. Board of Trsustees, Police & Firemen's Retirement System, 2005 N.J. AGEN LEXIS 237 (May 12, 2005), which did not require that the death of a PFRS member occur in active service.[4] Appellant misinterprets these cases, and they are not binding on us.

---

[4] We decline to address appellant's argument that, for good cause shown, the Board has the authority to alter or change a retirement classification from accidental disability to accidental death after the disability determination has been made. The Board's final agency decision was not based on appellant's failure to show good cause.

Unlike here, in Lake, the Board denied a request to change a police officer's retirement application from an ordinary disability retirement allowance to accidental death benefits under N.J.S.A. 43:16A-10, finding that the officer's widow did not timely file her request and her husband's death was not caused by a traumatic event "such that accidental benefits are available under N.J.S.A. 43:16A-10." Lake, 2005 N.J. AGEN LEXIS at *7-8, 13. Similarly, in Estock, the Board denied a widow's request to change her husband's special retirement allowance to accidental death benefits, finding that the widow's request was untimely. Estock, 2005 N.J. AGEN LEXIS 237 at *4.

Appellant argues that Lake and Estock support her interpretation of N.J.S.A. 43:16A-10(1) because, in those cases, the Board did not address whether the members were in active service at the time of their death. However, the Board's failure to address this issue is not determinative of whether or not the statute requires the same.

Appellant's argument implies that if the Board does not address every possible ground for denying a request, any grounds for denial that are not addressed simply do not exist. However, the Board's decision not to address every possible reason for denying a request to change a member's retirement application does not imply that additional issues do not exist or that there are no

additional grounds on which to deny the request. In fact, in Estock, the Board explicitly noted that it was unnecessary to fully explore or address all of the issues raised in the matter because "a decision on the merits is plain" and it was therefore unnecessary to explore additional grounds for dismissal. Estock, 2005 N.J. AGEN LEXIS 237 at *5. The Board in Estock and Lake therefore did not suggest that accidental death benefits are not dependent on a member's death occurring while in active service. Rather, the Board merely denied the requests on other grounds.

Moreover, despite appellant's claim to the contrary, the Board's precedent actually supports its interpretation of N.J.S.A. 43:16A-10(1). In Goode v. Board of Trustees, Police & Firemen's Retirement System, No A-4454-08 (App. Div. June 7, 2010) (slip op. at. at 6), we upheld the Board's determination that the petitioner was not entitled to death benefits under N.J.S.A. 43:16A-9 because her husband was not in active service at the time of his death and "consequently the only pension benefits payable from his PFRS account are his aggregate contributions owed to his beneficiary record."[5] Although the Board made this determination pursuant to N.J.S.A. 43:16A-9, the Board and the court relied on

---

[5] Although the case is unpublished, and therefore not binding, it is instructive in reviewing the Board's prior determinations of similar issues. See Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001); R. 1:36-3.

the language of the statute which provides that death benefits are payable "[u]pon the receipt of proper proof of the death of a member in active service . . . ." Id. at 4.

In Schott v. Board of Trustees, Police & Firemen's Retirement System, 94 N.J.A.R.2d (TYP) 227, the Board denied a former police officer's application for an ordinary disability retirement allowance, finding he was no longer "in service" when he filed his application, as required by N.J.S.A. 43:16A-6(1). The statute provides that "[u]pon the written application by a member in service . . . any member, under [fifty-five] years of age, who has had [five] or more years of creditable service may be retired on an ordinary disability retirement . . . ." N.J.S.A. 43:16A-6(1) (emphasis added.) The Board rejected the officer's application because he filed it five months after his employment had been terminated. Schott, 94 N.J.A.R.2d at 4-5.

Although the Board did not make its determination in Schott pursuant to N.J.S.A. 43:16A-10, its decision supports the Board's statutory interpretation in this matter because it relates to language that is almost identical to the language in N.J.S.A. 43:16A-10(1). "Indeed, when cognate laws are passed, they should be viewed as part of a consistent plan unless they are 'expressly or impliedly incompatible.'" Klumb, 199 N.J. at 32 (quoting Jacobs v. N.J. State Highway

27

<u>Auth.</u>, 54 N.J. 393, 401 (1969)).  "The statute should be considered in light of other statutory provisions and the nature of the subject matter."  <u>G.S. v. Dep't of Human Servs., Div. of Youth & Family Servs.</u>, 157 N.J. 161, 172 (1999).  Furthermore, "the pension statutes are to be construed as part of a harmonious whole[.]"  <u>Klumb</u>, 199 N.J. at 33.

The Board's precedent supports its interpretation of N.J.S.A. 43:16A-10(1).  Accordingly, the Board's decision was not arbitrary, capricious and unreasonable and must be upheld.

To the extent we have not specifically addressed appellant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION